UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JOHN E. HARRELL | ) |
| and | ) |
| DAWN D. HARRELL | ) Case No.: 1:20-cv-00087 (LO/MSN) |
| Plaintiffs | ) |
| v. | ) Case No.: 1:20-cv-1347 (LO/MSN) |
| DOUGLAS M. DELUCA, et. al. | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT PLAINTIFF'S SECOND MOTION TO COMPEL AGAINST DEFENDANT DELUCA**

This case arises from Plaintiffs' claims against Defendant Deluca relating to Deluca's sale of a property located at 6122 Lee Highway in Arlington, Virginia (the "Property") and Deluca's defective and incomplete construction work at the Property. Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs submit this motion for the following relief:

First, with respect to Deluca's failure to produce financial records relating to construction expenditures, the Plaintiffs respectfully request that Deluca be sanctioned pursuant to Rule 37(b)(2) by ordering (1) that the jury be informed that Deluca has spoiled financial and contractual documents and that they may infer that those documents were harmful to Deluca's defenses; (2) an irrebuttable presumption that Deluca did not purchase any material or perform any construction to the extent that he did not produce (or that the Plaintiffs did not otherwise obtain) an invoice reflecting work performed at the property or materials purchased for the property; and (3) that Deluca be required to pay attorney's fees in connection with the First Motion to Compel, this motion, and Plaintiff counsel's efforts in obtaining these documents from third parties.

1

Second, with respect to Deluca's failure to fully produce text messages and email attachments, the Plaintiffs request that the Court order that Deluca: (1) produce attachments to emails already produced but lacking attachments; (2) produce his phone for forensic extraction of all relevant text messages at Deluca's cost; and (3) pay Plaintiffs' attorney fees incurred in connection with the First Motion to Compel and this motion.

### I. THE FIRST MOTION TO COMPEL

This continued discovery dispute concerns unaccounted for funds, spoiled financial documents and communications and a number of evasive and incomplete interrogatory responses. Plaintiffs previously filed a motion to compel (the "First Motion to Compel") regarding certain of these matters to address demonstrable gaps in document production, which the Court granted. *See* First Motion to Compel (doc. # 26); Court's Order on First Motion to Compel (doc.# 31).

### II. THE ACCOUNTANT AND FINANCIAL DOCUMENTS

Among other things, the First Motion to Compel addressed incomplete document production of financial and contractual records relating to construction performed by Deluca as requested in RFP # 5, #9, #11, #12, #13, #15, #16, #17, #18. See Ex. A. Responding to the First Motion to Compel, Deluca assured the Court that he intended to produce all responsive documents. In particular, Deluca represented to the Court that, at the time of the First Motion to Compel, he had "engaged his accountant to identify the charges and expenditures associated with work performed at Plaintiffs' home." *See* Deluca Opposition Brief to First Motion to Compel (doc # 29) at 2-3. This same point was made at the hearing on the First Motion to Compel:

> MR. THOMAS: Yes. We provided that, and it's my understanding that the **accountant is providing** supporting documentation along with whatever is being collated with regards to this process.
>
> THE COURT: So, let me make sure I understand what you are saying. **You are saying that all bank statements and invoices related to these discovery requests in this case have already been turned over, or are you saying that they will be turned over**?

> MR. THOMAS: Will be turned over.
>
> THE COURT: Okay.
>
> MR. THOMAS: **That goes to the -- we're relying on the accountant to collate that information.**
>
> THE COURT: So, the financial documents which will be turned over are presently in the possession of the accountant, but you will be getting them and turning them over?
>
> MR. THOMAS: Yeah, that's my understanding, that **the accountant is using those financial documents and things of that nature to compile a list of the expenditures that were used and the work at issue**.
>
> THE COURT: But I want to be clear. You intend to turn over the raw documents in addition to whatever products the accountant puts together; is that correct?
>
> MR. THOMAS: Yes. Yes, Your Honor.

Transcript on Motion to Compel (doc # 47), page 9-10 (emphasis added).

Despite these representations to the contrary, Deluca did not engage his accountant to "compile a list of expenditures" or provide any other service related to this lawsuit. Deluca's accountant, through counsel, confirmed that they were "not engaged by Mr. Deluca, his counsel, or anyone else to prepare any documents/collate/summarize expenditures related to 6122 Lee Highway, either generally or in specific relation to this lawsuit." *See* Ex. B. Deluca's communications with the accounting firm further confirm that there was no effort underway to collect, summarize and collate his financial records associated with construction at the Property. *See* Ex. C.

The production of financial records relating to construction at the Property remains inadequate. Deluca's interrogatory responses on this issue are also incomplete and evasive. Although Deluca asserted he spent a great deal on construction, Deluca has not produced documents or interrogatory answers that substantiate this claim. (*Compare* Ex. D (stating in response to Interrogatory No. 1 that approximately $1.2 million in loan draws were utilized for labor and

3

materials) *with* Ex. E (itemizing approximately $340,000 in expenses in response to Interrogatory No. 2 and 3).

### A. DASHCO LOAN

Deluca borrowed money from Dashco, Inc., ("Dashco") to acquire the Property and complete construction. Deluca has not produced complete documents showing how the claimed $1.2 million in construction loan draws from Dashco were spent. For example, over the course of the lending relationship Deluca had seven (7) draws related to plumbing for a total plumbing-related expense of $94,000. Deluca, however, produced no invoice related to these draws. The Harrells issued a subpoena to the plumbing firm that Deluca identified, which produced specific invoices (that Deluca did not produce) related to the Property that total approximately $37,000. *See* Ex. F (PEC invoices).

In the absence of documentary evidence, the Harrells requested that Deluca schedule these draws by supplier, subcontractor and amount in order to shed light on the financial outlays related to construction at the Property. *See* Ex. D (Interrogatory No. 1). While Deluca identified these draws by gross amount and date totaling approximately $1.2 million, he has refused to provide any specific itemized detail regarding the use of the Dashco loan proceeds beyond his schedule of gross draws, referring the Harrells instead to the "production of invoices and draw transactions" themselves. *See id.* (Deluca Interrogatory and Response). Deluca, however, did not actually produce invoices that match these draws and the draws themselves, as noted, do not contain the detail requested. Rule 33(d) is an inappropriate vehicle for an interrogatory response where the records themselves are inadequate or are not produced at all.

### B. INVOICES

In the entire production to date, Deluca produced invoices that total less than $400,000.[1] For a significant portion of the $1.2 million (per Deluca) of Dashco draws, Deluca has not produced

---

[1] These do not include the few invoices Plaintiffs have obtained by subpoena.

invoices, even though he claims he spent this money on labor and material. These documents are critical to the claims and defenses in this case. The invoices document who performed work, when that work was performed, and the cost of the work. The Plaintiff have requested these documents numerous times, have provided numerous opportunities to Deluca to respond and have filed a previous motion to compel for the production of these documents. To date, these documents still have not been produced.

### C. CHECKS AND CREDIT CARD STATEMENTS

Deluca produced checks and credit card statements from February 2019 through December 2019. This self-imposed time limit is inappropriate because construction began in September or October of 2018. It is not possible to determine from the checks and credit card statements what expenses relate to construction at the Property as they are mixed in with personal expenses and expenses related to other construction projects. Despite being ordered to do so, Deluca did not produce the related bank account statements themselves, which would give tremendous context to the cash flows.[2]

### D. RELATED INTERROGATORIES

Subsequent to the First Motion to Compel, the incompleteness of Deluca's production was exacerbated by evasive interrogatory responses that avoided detailing the financial arrangements.

---

[2] The Court specifically ordered the production of bank statements.

> THE COURT: I will require that responsive documents and complete answers to all outstanding discovery that's been requested in the motion to compel be provided within 11 days from the date of this order. That will include the financial records that are at issue, **bank statements** and invoices.

Transcript of Hearing on Motion to Compel (doc # 47) at 12 (emphasis added).

There are a number of these, specifically John Harrell Interrogatory #2 and #3 (Exhibit E) and Dawn Harrell Interrogatory No. 1 (Exhibit D) (discussed above).

John Harrell's Interrogatory #3 requests Deluca to " [i]dentify all materials purchased by Deluca in order to perform the Project . . . . including the type of material, the date of purchase, the price paid, the vendor from whom it was purchased and the date it was delivered to the Property (if ever) or its current location (if not on the Property)." Exhibit E at 5-6. Deluca supplemental response on February 1, 2021 described a limited amount of materials totaling approximately **$104,000** and identifying a number of suppliers without specifying any specific amount whatsoever. *See id.* This in no way approaches the amount he claims to have spent on the Property.

John Harrell's Interrogatory #2 requests Deluca to schedule payments made to his contractors, subcontractors or employees. Specifically, he was asked to "identify all amounts paid to such person related to the Project including the date such payment was made, all amounts due and outstanding for Work performed on the Project as of the date of these responses, and any amounts that were previously or currently in dispute related to the Project, the reason for such dispute and, if applicable, how such dispute was ultimately resolved." *See* Exhibit E at 3-4. Deluca answered this interrogatory, as follows: "Mr. DeLuca does not owe any monies to any of the businesses listed in response to Interrogatory Number 1. Between April 5 and July 3, 2019[3], Mr. DeLuca incurred **$234,201.75** in labor costs and approximately **$110,000** in materials costs. Mr. DeLuca reserves the right to supplement this Answer upon further search, investigation, and inquiry." *Id.* (emphasis added). After follow-up requests to answer the interrogatory, Deluca supplemented his response on February 1, 2021, describing a limited amount of labor costs totaling approximately **$157,000**. *Id.*

---

[3] Deluca's self-limiting time period fails to include relevant periods when construction work was performed on the Property.

6

This also in no way approaches the amount he claims to have spent on the Property and is an incomplete answer because all relevant time periods are not addressed.

### E. DELUCA'S CONDUCT WARRANTS AN ADVERSE INFERENCE

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). This missing evidence is critically important in this case as Deluca has asserted that he did not fail to purchase materials, did overcharge the Plaintiffs, and did not significantly profit from the transaction. It is a violation of Deluca's discovery obligations to refuse to produce these documents and to exacerbate the matter through evasive interrogatory responses.

Because Deluca has failed to comply with a court order compelling production, Rule 37(b) is directly implicated. That rule provides that where a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A); *S. States Rack And Fixture, Inc. v. Sherwin Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). One such sanction is to prohibit "the disobedient party . . . from introducing designated matters in evidence[.]" Fed. R. Civ. P. 37(b)(2)(A)(ii).

The Fourth Circuit has developed a four-part test to determine the appropriate sanction under Rule 37(b): "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). These factors are met here.

First, Deluca acted in bad faith. Deluca inaccurately represented to the Court that his accountant had been engaged, apparently to legitimize his efforts to produce accurate and complete

discovery responses. Together with the absence of meaningful compliance with the Court's Order and his discovery obligations more generally (as described above), Deluca's discovery responses reflect an intent to deprive Plaintiffs access to the factual context of the claims and defenses.

Second, the Plaintiffs have suffered prejudice as a result. While there continues to be an opportunity during the open discovery period for Deluca to course correct, even late delivery of evidence will foreclose rebuttal or investigatory efforts by Plaintiffs as the deadline for them to do so will have passed. Plaintiffs have pursued Deluca on these requests repeatedly and have relied on Deluca's repeated assurances of compliance. The clouded status of the basic financial facts underlying the transactions infects the entire trajectory of the case. Deluca, for example, has submitted an expert report from an architect that posits that large scale construction took place after closing on the transaction. This report is based on unknown facts that could be proven or disproven (conclusively) by reference to the financial facts that document the date work occurred, how much was charged and paid for the work and who performed it. Deluca has inserted an unfair degree of control over the existence or nonexistence of facts. This is a fundamental prejudice that violates the core norm of discovery—a shared set of facts from which legal conclusions are argued.

Third, there is a demonstrable need to deter Deluca's noncompliance. The Court's Order on November 20, 2020, was clear and unequivocal. As discussed above, Deluca did not comply. Deluca's failure to do so was not accidental and efforts to obtain compliance without needlessly involving the Court have failed.

Lastly, the exclusionary sanctions sought below are no more severe than the general rules that provide that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless[.]" Fed. R. Civ. P. 37(c)(1) (emphasis

added). To the extent Deluca has not provided the documentary evidence outlining the factual basis of his construction, he should not be allowed to argue beyond that failure.

For the foregoing reasons, the Harrells respectfully request that Deluca be sanctioned pursuant to Rule 37(b)(2) by ordering (1) that the jury be informed that Deluca has spoiled financial and contractual documents and that they may infer that those documents were harmful to Deluca's defenses; (2) that the Court order an irrebuttable presumption that Deluca did not purchase any material or perform any construction to the extent that he did not produce (or that the Plaintiffs did not otherwise obtain) an invoice reflecting work performed at the Property or materials purchased for the Property; and (3) order that Deluca be required to pay attorney's fees in connection with the First Motion to Compel, this motion, and Plaintiff counsel's efforts in obtaining these documents from third parties.

### III. OTHER MATTERS

This Part III concerns Deluca's failure to fully produce text messages and email attachments.

#### A. TEXT MESSAGES

The Harrells renew their motion to compel production of Deluca's text messages and phone. As discussed in the prior motion, they are known to exist. The text production remains inadequate for at least the following reasons: (1) a material number of text messages lack dates (*see* Exhibit H, selected undated text messages); (2) the attachments are often hidden in a digitized manner and are therefore not viewable (*see* Exhibit I, samples taken from a single text thread); and (3), perhaps most importantly, the production is incomplete—there are entire text threads that are known to exist that Deluca did not produce at all. For example, there is a text thread between Deluca and Dawn Harrell that Deluca did not produce (which the Harrells did produce) according to Plaintiffs' review. It is believed there are numerous others, all of which document the transactions at issue and, importantly, the construction.

To remedy this issue, Plaintiffs propose that Deluca's phone be imaged by a third-party or that access to his iCloud account be granted to that party and Counsel agree on which threads and search terms should be used and produced. This service does not have to be inordinately expensive as the software programs that exist to accomplish this are widely available and relatively inexpensive.

### B.  EMAIL ATTACHMENTS

A large number of email messages lack attachments. A list of specific emails missing attachments from Deluca's production was provided to Deluca's counsel by reference to bates label. The Harrells respectfully renew their request in the First Motion to Compel that Deluca be ordered to provide attachments to all emails in a manner in which the email and attachment are clearly organized.

### IV.  CONCLUSION

Wherefore, for the reasons stated above, Plaintiffs, by counsel, respectfully request that the Court:

A. With respect to Part II above, sanction Deluca pursuant to Rule 37(b)(2) by ordering (1) that the jury be informed that Deluca has spoiled financial and contractual documents and that they may infer that those documents were harmful to Deluca's defenses; (2) an irrebuttable presumption that Deluca did not purchase any item or perform any construction to the extent that he did not produce (or that the Plaintiffs did not otherwise obtain) an invoice reflecting work performed at the property or materials purchased for the property; and (3) that Deluca be required to pay attorney's fees in connection with the First Motion to Compel, this motion, and Plaintiff counsel's efforts in obtaining these documents from third parties. In the alternative, Plaintiffs request an order compelling production of the documents identified in Part II and responses to interrogatories identified in Part II (John Harrell Interrogatory #2 and #3 and Dawn Harrell Interrogatory #1) with leave to renew their motion for an adverse inference and an award of fee's pursuant to Rule 37.

B. With respect to Part III above, order that Deluca (1) produce attachments to emails already produced but lacking attachments; (2) produce his phone for forensic extraction of all relevant text messages at Deluca's cost; and (3) pay Plaintiffs' attorney fees incurred in connection with the First Motion to Compel and this motion, in addition to such further relief as the Court may deem appropriate under the circumstances.

V. **CERTIFICATION OF GOOD FAITH ATTEMPT TO RESOLVE**

Counsel for Harrell certifies that a good faith effort has been made between counsel to resolve the discovery matters at issue.

Dated: April 9, 2021                Respectfully submitted,

/S/ THOMAS R. LYNCH
THOMAS LYNCH (VSB NO. 73158)
SELZER GURVITCH RABIN WETHEIMER & POLOTT, P.C.
4416 East West Highway, Fourth Floor
Bethesda, MD 20814
Telephone: (301) 986-3178
Facsimile: (301) 986-1301
Email: tlynch@sgrwlaw.com
*ATTORNEY FOR JOHN AND DAWN HARRELL*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON APRIL 9, 2021, I SERVED A TRUE AND CORRECT COPY OF THE FOREGOING ON THE FOLLOWING COUNSEL OF RECORD THROUGH THE COURT'S CM/ECF SYSTEM

>RAIGHNE C. DELANEY
>JUANITA F. FERGUSON
>MALCOLM W. THOMAS
>BEAN KINNEY & KORMAN, P.C.
>2311 WILSON BLVD, SUITE 500
>ARLINGTON, VA 22201
>*COUNSEL FOR DOUGLAS DELUCA*

>/S/ THOMAS R. LYNCH
>THOMAS LYNCH (VSB NO. 73158)
>SELZER GURVITCH RABIN WETHEIMER & POLOTT, P.C.
>4416 East West Highway, Fourth Floor
>Bethesda, MD 20814
>Telephone: (301) 986-3178
>Facsimile: (301) 986-1301
>Email: tlynch@sgrwlaw.com
>*ATTORNEY FOR JOHN AND DAWN HARRELL*