1317

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

------------------------------x
                              :
JOHN E. HARRELL, et al.,      : Civil Action No.
                              :
              Plaintiffs,:
                              :
         versus               : 1:20-cv-87
                              :
DOUGLAS M. DELUCA,            : July 28, 2022
                              :
              Defendant. :
------------------------------x.

VOLUME 7 (Pages 1317 - 1335)
TRANSCRIPT OF BENCH TRIAL
BEFORE THE HONORABLE LIAM O'GRADY
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S

FOR THE PLAINTIFFS:     THOMAS R. LYNCH, Esq.
                        WALTER FITZHUGH
                        Asmar, Schor & McKenna, PLLC
                        5335 Wisconsin Avenue, N.W.
                        Suite 400
                        Washington, DC 20015


FOR THE DEFENDANT:      MICHAEL J. COUGHLIN, Esq.
                        BROOKE WEST
                        Walsh Colucci Lubeley & Walsh
                        4310 Prince William Parkway
                        Suite 300
                        Prince William, VA 22192




OFFICIAL U.S. COURT REPORTER:    MS. TONIA M. HARRIS, RPR
                                 United States District Court
                                 401 Courthouse Square
                                 Fifth Floor
                                 Alexandria, VA 22314

1318

TABLE OF CONTENTS
TRIAL WITNESSES

On behalf of the Plaintiff:

Michael Young

        Direct examination by Mr. Lynch............... 1319
        Cross-examination by Mr. Coughlin............. 1324

EXHIBITS

On behalf of the Plaintiffs                    Admitted

Numbers 736 - 738.................................... 1332

MISCELLANY

Preliminary matters.................................. 1319
Certificate of Court Reporter........................ 1335

Harrell v. Deluca

1319

**P R O C E E D I N G S**

(Court proceedings commenced at 11:02 a.m.)

THE COURTROOM CLERK:  Civil action 20-87.  John E. Harrell, et al. versus Douglas M. Deluca.

Would counsel please note their appearances for the record.

MR. LYNCH:  Good morning, Your Honor.  Thomas Lynch for the plaintiffs and Mr. Fitzhugh here.

THE COURT:  Good morning to you both.

MR. COUGHLIN:  Good morning, Your Honor.  Michael Coughlin here for Mr. Deluca, and Brook West as well.

THE COURT:  All right.  Good morning to you both. Good to see you all.  And you have a witness here?

MR. LYNCH:  We have a witness.

THE COURT:  Please come forward, sir.  Good morning to you.

THE WITNESS:  Good morning.  How are you?

THE COURT:  Fine, thank you.  I've been tortured for an hour with the physical therapy.  I'm ready to go.

THE COURTROOM CLERK:  Please raise your right hand. (MICHAEL YOUNG, on behalf of the Plaintiffs, sworn.)

THE COURT:  Thank you.

DIRECT EXAMINATION

BY MR. LYNCH:

Q.  Good morning, Mr. Young.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

Harrell v. Deluca

1320

Can you please state your name for the record.

A.   I'm Michael Young.

Q.   And who is your employer?

A.   Marble Systems.

Q.   How long have you worked at Marble Systems?

A.   22 years.

Q.   Okay.  What is your current position?

A.   My current position is branch manager, distribution manager, and production manager.

Q.   You should have a little package of documents up there. There you go.  And please turn to tab 737, which is a copy of Exhibit 737.

So can you describe for the Court what review of Marble Systems records you have conducted to determine whether Mr. Deluca or his company, Federal Home, paid for this tile shown in Exhibit 737?

A.   Sure.  I looked through the orders to see what was actually selected by the customer.  I spoke with the gentleman who worked with him as well as reviewed the accounting for Marble Systems for Mr. Deluca's company.

Q.   Okay.  And the gentleman who worked with him, would that Mr. Shepherd?

A.   Yes, to the best of my knowledge.

Q.   Okay.  And explain how Marble Systems recordkeeping works in terms of tracking orders for tile with little bar codes

Harrell v. Deluca

1321

like this one has in Exhibit 737?

A.    Explain how?

Q.    Well, just generally how do you track orders at Marble Systems in terms of paperwork and, you know, in relation to the item codes?

A.    We have an order entry system for point of sale.  Orders are entered into that system using the specific item codes, which are very, very specific to colors, materials used, finishes used on the products, as well as, you know, what the overall design is.  Once that's entered then, you know, an order of confirmation is created or a confirmation goes for customer approval.  Customer approval has to be given, funds are applied to the accounts.  Once funds are applied to the account -- or not to the account, I'm sorry, but to a particular order.  Once a particular order has funds applied, then either that order would go into production or will be placed on order, it's a special order, or picked up by the customer if it's in stock.

Q.    Okay.

A.    Once that's done, then accounting, of course, would apply -- would invoice those orders out as completed.

        (Court reporter clarification.)

A.    Once orders -- invoices are completed once it's confirmed as picked up by the customer and paid in full.

Q.    And in your search of the records, Marble Systems

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

Harrell v. Deluca

1322

records, did you also look under Mr. Deluca's personal name in addition to records relating to Federal Home?

A.   I looked under any accounts that I could find for Federal Home or Mr. Deluca's personal name.  I did not see, you know, anything applying to this particular item.

Q.   Okay.  So what were the results of your research into Marble Systems records as to whether the defendant or his company, Federal Home, paid any money to Marble Systems for the tiles shown in Exhibit 737?

A.   I saw no funds applied to place this particular item on order with our company.

Q.   Okay.  And describe whether Marble Systems records have any record of a selection being made for this tile?

A.   A selection was absolutely made.  There is an order confirmation that was produced.  However, the order confirmation was canceled and no funds were applied through our accounting for that particular order confirmation.

Q.   What does your research show as to whether Marble Systems owes any refund or credit to Mr. Deluca or Federal Home?

A.   Mr. Deluca's Federal Home account is at zero dollars. There's absolutely nothing owed to Mr. Deluca at all.

Q.   Okay.  And can you explain how the lack of any credit or refund due to Mr. Deluca or his company affects your conclusions as to whether Mr. Deluca or his company paid any money towards this tile in Exhibit 737?

Harrell v. Deluca

1323

A.   Yeah, I mean if the order was paid for, of course, we would produce it.  However, if that was canceled for some reason, then a refund check would have been issued to Mr. Deluca.  And I'm sure he would have cashed it and done with his funds as he saw fit, so.

Q.   Thank you.  Okay.  And then I want to show you 738 in your packet.  This is Exhibit 738.

A.   Okay.

Q.   So what review have you conducted of Marble Systems records to determine whether Mr. Deluca or his company, Federal Home, purchased the tile shown in Exhibit 738 of Marble Systems?

A.   This is a little bit more difficult.  The reason why it's a little bit more difficult is normally builders do not buy slabs directly through us.  Slabs come in bulk.  We get 50 to 80, even 100.  You know there's 10,000 slabs in stock at any given time.  They do come in on multiple occasions.  It's not a one time and gone kind of thing.  Trying to track that is -- is really impossible for me to do through Marble Systems.  As the people purchasing would be employed by Mr. Deluca to do the fabrication, which would be an outside third party.  It has nothing to do with us or Mr. Deluca directly.

Q.   Okay.  So is it fair to say for a slab, like the one shown in Exhibit 738, that if Mr. Deluca paid for this tile, it wouldn't be paid to Marble Systems, is that fair?

Harrell v. Deluca

1324

A.    If Mr. Deluca paid for that particular slab of material, it would be paid through a fabricator who is employed to do the fabrication and installation on the project, which then would be paid through that fabricator to Marble Systems for the raw material costs, not necessarily for the cost of the fabrication and whatever markup, labor would, you know, be incurred to produce the countertops.

Q.    Okay.  So as a result of your research into Marble Systems accounting records, did you see any evidence that Mr. Deluca paid money to Marble Systems for this tile in Exhibit 738?

A.    I did not see anything, no.

        MR. LYNCH:  Okay.  All right.  No further questions.

        THE COURT:  Mr. Coughlin, cross-examination.

        MR. COUGHLIN:  Yes, Your Honor.  Good morning, again, Mr. Young.

        THE WITNESS:  Good morning.

                    CROSS-EXAMINATION

BY MR. COUGHLIN:

Q.    Staying on Exhibit 738.

        Shown in that picture, the large block, that's known as a slab, correct?

A.    Correct, that is a slab.

Q.    It's not known as tile, correct?

A.    That's correct.

Harrell v. Deluca

1325

Q.   Mr. Young, Marble Systems accepts deposits from builders for future tile workers, correct?

A.   No, Marble Systems -- I mean if customers would like to give us money fine, but we don't normally accept large payment sums without the intent of anything being applied to a particular order.  Usually order confirmations would be given, customers would give us the money to pay for those orders, and we would proceed to get them the materials.

Q.   Okay.  So a customer could make a deposit but not have that money apply to a specific tile right away, correct?

A.   They could make a deposit against an order, but I mean I don't understand why they would want to give us money without any reason to do so or without an order confirmation telling them how much it would be, how would they be able to do so.

Q.   Okay.

A.   What would the intent be.  It doesn't make sense with accounting or ordering processes.

Q.   Okay.  In looking through Marble Systems's accounting, did it appear that the account that Mr. Deluca used for the tile ordered for 6122 Lee Highway was for his Federal Home account?

A.   Correct.

Q.   And did you see that on May 10, 2019 a payment was received by Marble Systems for $25,726.45?

A.   I did.

Harrell v. Deluca

1326

Q.   And then, did you then look through the invoices to see what -- what had been invoiced to him as of certain dates?

A.   I looked through to see where the funds had been applied and to which orders and invoices they had been applied, yes.

Q.   And the funds aren't applied and actually, you know, attributed to a specific order until an invoice is generated, correct?

A.   No, that's not correct.

Q.   Well, you generated invoices?

A.   It invoices the end after orders had been paid and applied.

Q.   And in terms of what the customer sees that's all that they see in terms of funds being applied to a specific order?

A.   What a customer would see to -- for funds being applied on their accounts is they would be given an account sheet which has the monies as well as a breakdown of exactly where those materials are applied, as well as what remaining balance they may have, whether that's positive or negative, and that would be order number specific.

Q.   But a customer doesn't just automatically receive that report, correct?

A.   I mean it depends.  If it's a COD customer, usually we would not mail out a COD report unless there is a reason to do so, such as, they had owed us a balance.  You know nothing was -- it didn't quite balance out or we owed them a balance.

Harrell v. Deluca

1327

Term customers, yes, would automatically see it monthly.

Q.   Okay.  And could you look in your packet and look at Exhibit 736.  And if you could look through each one of these invoices, just quickly, and then I'll ask a series of questions.

A.   Okay.

Q.   Do all of the invoices within Exhibit 736, except the last one, have a shipped to address of 6122 Lee Highway?

A.   I actually didn't check the shipped to address, but I'll gladly do so again for you?

Q.   Sure.

A.   It appears so, yes.

Q.   So you would agree these are invoices associated with 6122 Lee Highway, correct?

A.   I couldn't say what particular job they were associated with, sir.  I could only say that that's the delivery address that we had on file.

Q.   And the terms for all of these invoices is COD, correct?

A.   Yes, as far as I can tell.

Q.   And so what that means is that the funds are not applied to the specific order until an invoice is generated and the thing -- the item is either picked up or delivered, correct?

A.   Yes.

Q.   For --

A.   Excuse me, I'm sorry.  Do you mind?  Can I clarify that

Harrell v. Deluca

1328

answer just a little bit?

THE COURT:  Yes, go ahead.

THE WITNESS:  I'm so sorry.  Yes, that would be the case, but in a special order instance where something has to be produced, those funds would have been applied to that order prior to delivery of the item.

BY MR. COUGHLIN:

Q.   Okay.

A.   So we have to order that.  That's our investment as a company.  We require funds prior to production on any of those materials.  If it's in stock, shipped, absolutely, you're correct.

Q.   Okay.

THE COURT:  Thank you.

THE WITNESS:  Sure.

BY MR. COUGHLIN:

Q.   Let's turn to a particular invoice, let me find it.  Sorry.

If you could turn a few pages to invoice number ending 704.

A.   Okay.  Constantine.

Q.   That's a waterjet tile, correct?

A.   Yes, it is.

Q.   And that has terms of COD, correct?

A.   Correct.

Harrell v. Deluca

1329

Q.    And water jets are -- this particular waterjet, is a special order tile, correct?

A.    To actually determine that, I would need to look a little bit closer.  It appears to be.  However, what is not on here is a batch number which would be on the order confirmation for this particular order.  I understand that we have colorways that are in stock, quick ship, for this, as well as colorways that are made to order as well.

Q.    Okay.  But some waterjet tiles, this one in particular, are COD terms for particular customers, correct?

A.    Yes.

Q.    And you had stated earlier that you did see in Marble Systems system that a selection for the tile shown in Exhibit 737 was made, correct?

A.    Yes, correct.

Q.    And that was made on June 10th of 2019, correct?

A.    Sorry, the date escapes me.  Forgive me.

Q.    Okay.  Sales people -- or are you familiar in your capacity at Marble Systems with kind of what a sales person is and is not authorized to do in terms of dealing with customers?

A.    Yes, very, considering in the management of production, sales, as well as the overall branch.

Q.    And sales people are not authorized to requests cash from customers to expedite the processing of tile orders, correct?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

Harrell v. Deluca

1330

A.     They are not.

MR. COUGHLIN:  No further questions, Your Honor.

THE COURT:  All right.  Thank you, Mr. Coughlin.
Redirect?

MR. LYNCH:  No, Your Honor.

THE COURT:  All right.  Well, may Mr. Young be
excused?

MR. LYNCH:  Yes, Your Honor.

THE COURT:  All right.  Thank you, sir.  You're
excused.  And have a good day.

THE WITNESS:  Thank you very much.  You too.

(Witness excused.)

THE COURT:  All right.

MR. LYNCH:  One housekeeping.

THE COURT:  All right.

MR. LYNCH:  So on the expert reports counsel have
conferred.  The end result is that the plaintiffs agree to the
expert reports coming in, all expert reports on both sides
coming in for any purpose.  And defendant has a caveat to that
that I'll let Mr. Coughlin explain.

THE COURT:  Okay.

MR. COUGHLIN:  Yes, Your Honor.  We just are willing
to stipulate to the veracity of what's in the expert reports.
It's something that, you know, we've certainly referred to at
trial, but by having them admitted and theirs admitted saying

these are accurate.  Just want to make sure that's clear.

THE COURT:  So to the extent there is testimony concerning what's in the expert report, you have no objection, but for other statements from the expert -- other paragraphs of the report that may have touched on some other issue. You're not in agreement to allowing that to be used in your posttrial briefing.

Is that what I understand?

MR. COUGHLIN:  I'm not actually pushing even that far.  I just don't want the Court to think that by us agreeing that they can be moved into evidence, that what's in those reports is, in fact, accurate.  I mean they are hearsay. Certainly, if they weren't testified to, you know, then they're, you know, still being offered for the truth of the matter asserted.  And we don't agree that what they're saying is truthful.  I don't think that we're going to say that they can't refer to a page of a report that wasn't actually testified to, but the Court might not give that as much weight as other things that were testified to.  So that's all I'm just making sure is crystal clear.

THE COURT:  All right.  Okay.  And the reports will come in subject to objections to anything that you believe is -- either side believes hasn't been demonstrated through the evidence in the case.  We'll see where we go with that. That's fine.

Harrell v. Deluca

1332

Okay.  736 through 738 are in evidence already or --

MR. LYNCH:  They should be from Mr. Shepherd's testimony, but I move to admit just out of an abundance of caution.

THE COURT:  Any objection?

MR. COUGHLIN:  No objection.

THE COURT:  All right.  They're received.

(Exhibit Nos. 736 through 738 were received into evidence.)

MR. LYNCH:  One last point on the expert reports. So our list of the exhibits containing the expert reports are a little longer than their list.  I don't have that ready right now.

THE COURT:  Okay.

MR. LYNCH:  So we can either follow up with Ms. Miller with an e-mail or we can file a joint motion, whatever the Court would prefer.

THE COURT:  You can do that informally with Ms. Miller, if she will allow you to do so, and it shouldn't be too difficult to do that.  So follow up with her.

MR. LYNCH:  Thank you.

THE COURT:  And have you all been meeting and conferring about resolving the case?  I know that you came away from trial and say let's go give it a try.

MR. COUGHLIN:  We have not, Your Honor.  It just -- I think it's a difficult case to settle at this stage, given

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

Harrell v. Deluca

1333

both sides expectations of what settlement looks like.  I always believe that every case should settle.  So there really have not been further discussions.  Certainly counsel for Mr. Deluca, and I do believe Mr. Deluca himself, is open to those types of discussions, but they have not been initiated.

THE COURT:  Okay.  Well, you know, we've listened to the evidence now and, you know, the fraud is a close question.  There's evidence that plaintiff will point to and, of course, as we have discussed it, it's a higher burden on the civil side and the present intent is a hurdle that exists for plaintiff.  And so, take a look at that and keep thinking about it.

And I think Mr. Wallace is pretty close to having the transcript done or has it done.  So we'll let you know that.  And start the clock ticking on the posttrial briefs.  Okay.

MR. COUGHLIN:  On that, Your Honor, will you -- will there be like a minute entry regarding the transcript so that we know that the clock is ticking or how would that be handled?

THE COURT:  Yeah, I'll make sure that you get the date and time so you're not wasting any time.  I mean, obviously, you can be working on your briefs already without the transcripts, but I know the transcripts are helpful.

Okay.  Well, it's good to see you all.  You have a

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

Harrell v. Deluca

1334

good weekend and we're in recess.

**(Proceedings adjourned at 11:26 a.m.)**

CERTIFICATE OF REPORTER


        I, Tonia Harris, an Official Court Reporter for the Eastern District of Virginia, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the Bench Trial in the case of the **JOHN E. HARRELL, et al. versus DOUGLAS M. DELUCA**, Civil Action No.: 1:20-cv-87, in said court on the 28th day of July, 2022.

        I further certify that the foregoing 19 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, my computer realtime display, together with the backup tape recording of said proceedings to the best of my ability.

        In witness whereof, I have hereto subscribed my name, this August 9, 2022.




_____
Tonia M. Harris, RPR
Official Court Reporter

1335