**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-2265**

———————

JOHN E. HARRELL; DAWN D. HARRELL,

      Plaintiffs - Appellants,

v.

DOUGLAS DELUCA,

      Defendant - Appellee.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:20-cv-00087-LO-IDD)

———————

Argued:  January 24, 2024                          Decided:  March 27, 2024

———————

Before KING, WYNN, and RUSHING, Circuit Judges.

———————

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Wynn wrote the opinion, in which Judge King and Judge Rushing joined.

———————

**ARGUED:**  Thomas Ryan Lynch, ASMAR, SCHOR & MCKENNA, PLLC, Washington, D.C., for Appellants.  Michael John Coughlin, WALSH COLUCCI LUBELEY & WALSH, PC, Woodbridge, Virginia, for Appellee.  **ON BRIEF:**  E. Andrew Burcher, WALSH COLUCCI LUBELEY & WALSH PC, Woodbridge, Virginia, for Appellee.

WYNN, Circuit Judge:

Appellants John and Dawn Harrell brought this action after their relationship soured with Douglas DeLuca, the general contractor from whom they purchased a home in Arlington, Virginia. The Harrells sued DeLuca, alleging fraudulent inducement, constructive fraud, breach of contract, and violations of the Virginia Consumer Protection Act. The district court granted summary judgment in DeLuca's favor as to the Harrells' fraud claims based on one category of misrepresentations that they allege DeLuca made prior to their entry into the contract for purchase of the home. The case otherwise proceeded to a bench trial, after which the court found for the Harrells on the breach-of-contract claim and for DeLuca on all other claims.

We agree with the Harrells that summary judgment was inappropriate. As to the bench trial, we also agree with the Harrells that the district court must make explicit findings related to one of each of their constructive-fraud and breach-of-contract claims. Accordingly, we vacate summary judgment and the judgment after the bench trial as to the claims in question and remand for additional proceedings consistent with this opinion. Regarding the remaining claims, the resolutions of which the Harrells do not challenge on appeal, we affirm.

I.

This case arises from the Harrells' purchase of a property in Arlington, Virginia

("the Property").[1] *Harrell v. Deluca*, No. 1:20-CV-87, 2022 WL 16745115, at \*1 (E.D. Va. Nov. 7, 2022). The Property consists of a six-bedroom house and separate two-level garage, or "carriage house." *Id.* Douglas DeLuca, a general contractor who specializes in renovating residential properties, purchased the Property in 2018. *Id.* In 2019, the Harrells decided to relocate to the Washington, D.C., area and began to look for a residence. *Id.* A real estate agent introduced the Harrells to DeLuca, and DeLuca showed the Harrells the Property. *Id.*

On April 3, 2019, the Harrells and DeLuca entered into a contract for the sale of the Property ("the Sales Contract") for a price of $4,425,139.00. The Sales Contract included an addendum containing a list of improvements that DeLuca was to make to the Property as part of the sale. Over the next few months, the parties executed various addenda to the Sales Contract. These addenda modified the improvements DeLuca was to make to the Property.

The parties closed on the sale on July 3, 2019, and, on that date, entered into another contract (the "Construction Agreement"). The Construction Agreement identified which of the planned improvements, as set forth in the Sales Contract, were still outstanding and provided that all outstanding work would be completed by August 1, 2019. The Construction Agreement also identified several new improvements that were

---

[1] These facts are drawn in large part from the district court's findings of fact following the bench trial in this case, which neither party challenges on appeal. Where relevant to the Harrells' appeal of the district court's grant of summary judgment, these facts are drawn from the record before the court on summary judgment and provided in the light most favorable to the Harrells as the nonmovants.

to be made to the Property and provided that new work was to be completed by August 15, 2019.

DeLuca continued to work on the property over the next month, but the relationship between the parties deteriorated. The Harrells "began to have doubts about [DeLuca's] performance of the contract" and DeLuca felt that the Harrells were continuously making changes and interfering with his successful completion of the improvements to the Property. *Harrell*, 2022 WL 16745115, at *1. John Harrell ordered DeLuca to cease work on August 6, 2019, and, although he thereafter asked DeLuca to return to work, the relationship between the parties ultimately "had become irreconcilable and construction on the house was never completed." *Id.* at *2.

On January 27, 2020, the Harrells filed the present diversity action in federal district court, asserting claims of fraud in the inducement, violations of the Virginia Consumer Protection Act, and breach of contract. DeLuca moved to dismiss the complaint, but the district court denied his motion on March 26, 2020. On December 14, 2020, the Harrells filed an Amended Complaint asserting claims of fraud in the inducement, constructive fraud, violations of the Virginia Consumer Protection Act, and breach of contract.

The Harrells' claims for fraud in the inducement and constructive fraud arise from various representations they allege DeLuca made to them prior to their entry into the Sales Contract that they discovered were false after the relationship between the parties deteriorated. Specifically, the Harrells identified five categories of statements DeLuca made that they allege they have since learned were false: (1) that the square footage of

4

the Property was 6,500 square feet; (2) that work on the Property was being performed by licensed subcontractors ("the licensing representation"); (3) that the roof on the Property was original slate; (4) that the custom marble tiling for the bathroom floor had already been ordered; and (5) that DeLuca had obtained the required permits to perform construction on the Property ("the permitting representation").

DeLuca moved for partial summary judgment on the breach-of-contract claim and for summary judgment and dismissal of all other claims in the Amended Complaint. The Harrells cross-moved for partial summary judgment on the breach-of-contract claims and on one of DeLuca's affirmative defenses. The district court granted summary judgment in DeLuca's favor on the Harrells' fraud claims that were based on the licensing representation. It otherwise denied the motions for summary judgment.

The parties proceeded to a bench trial, which took place off and on from July 11 through 28, 2022. After the trial and posttrial briefing, the district court issued a memorandum opinion containing its findings of fact and conclusions of law. *Harrell*, 2022 WL 16745115. The court found in DeLuca's favor on the Harrells' remaining claims for fraud in the inducement, finding that they had not shown that DeLuca had the requisite intent to defraud prior to forming the Sales Contract. *Id.* at *3. The court also found in DeLuca's favor on the Harrells' claims for constructive fraud and violations of the Virginia Consumer Protection Act. *Id.* at *3–7. On the former point, the court found that the source-of-duty rule barred the claims. *Id.* at *4.

However, the district court found in the Harrells' favor on their claim for breach of contract based on DeLuca's failure to complete various work outlined in the Construction

5

Agreement by August 1, 2019. *Id.* at \*8. The Harrells requested rescission of the contract as remedy for the breach, but the court declined to rescind the contract and instead awarded the Harrells $181,762.87 in damages. *Id.* at \*12. The Harrells timely appealed.

II.

On appeal, the Harrells make three assignments of error. First, they argue that the district court erred in granting summary judgment in DeLuca's favor on their fraud claims based on the licensing representation. Next, they contend that the district court erred in finding that the source-of-duty rule barred their claims for constructive fraud based on the permitting representation. Finally, they assert that the district court violated Federal Rule of Civil Procedure 52 by failing to make legal conclusions regarding whether DeLuca breached the Sales Contract, instead focusing only on the Construction Agreement. We address each assignment of error in turn.

A.

The Harrells first challenge the district court's grant of summary judgment on their fraud claims based on the licensing representation—their allegation that DeLuca erroneously represented to them, prior to their entry into the Sales Contract, that he employed only licensed subcontractors. "We review a district court's grant of summary judgment de novo, construing all facts and reasonable inferences in favor of the non-moving party." *Millenium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co.*, 744 F.3d 279, 285 (4th Cir. 2014).

The Harrells argue that the district court erred in concluding that the licensing representation was insufficient to sustain a claim for either fraud in the inducement or

6

constructive fraud. Under Virginia law,[2] to prevail on an "actual fraud" claim, a plaintiff must prove: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party misled." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (quoting *Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). Virginia also recognizes a claim for constructive fraud, which "differs only in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently." *Id.*

In granting summary judgment in DeLuca's favor, the district court focused primarily on the second element, materiality. *Harrell v. Deluca*, 590 F. Supp. 3d 941, 949 (E.D. Va. 2022). Specifically, the district court concluded that the "Harrells assert that this misrepresentation was material to entering the contract but do not point to any evidence to support this claim." *Id.* The district court then went on to conclude that Virginia law does not require that subcontractors working under a licensed contractor hold their own licenses and thus concluded that, contrary to the Harrells' assertion, DeLuca's use of unlicensed subcontractors was not unlawful. *Id.* at 949–50.

However, there was evidence before the district court on summary judgment that the licensing representation *was* material to the Harrells' entry into the contracts to

---

[2] The parties agree that Virginia substantive law governs. *See* Opening Br. at 13; Response Br. at 10 n.2; *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 n.4 (4th Cir. 2019) (noting that when parties agree that a certain state's law applies, "we need not inquire further into the choice-of-law question[]").

purchase and improve the Property. Under Virginia law, "a fact is material when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred." *Packard Norfolk, Inc. v. Miller*, 95 S.E.2d 207, 211–12 (Va. 1956).

In support of their opposition to DeLuca's motion for summary judgment, the Harrells submitted declarations in which they each stated they would not have entered into the Sales Contract or Construction Agreement, nor closed on the sale, had they known that "DeLuca performed construction with unlicensed subcontractors." J.A. 193 ¶ 3, 224 ¶ 3.[3] And while this evidence was submitted to the district court in the form of self-serving declarations from the Harrells, DeLuca points to no evidence that contradicts these declarations.

Moreover, as the Harrells are the nonmovants, their self-serving declarations can defeat summary judgment. *See Pfaller v. Amonette*, 55 F.4th 436, 450 (4th Cir. 2022) (discussing self-serving affidavits); *Mann v. Failey*, 578 F. App'x 267, 273 n.2 (4th Cir. 2014) (per curiam) (unpublished but orally argued) ("[T]he record could defeat summary judgment even if the evidence consisted exclusively of so-called 'self-serving' declarations from [the nonmovant] himself."); Fed. R. Civ. P. 56(c)(1)(A), (4) (permitting parties to show genuine dispute of material fact using a variety of materials, such as "affidavits or declarations," so long as the affidavit or declaration meets certain requirements).

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Thus, the evidence at summary judgment, taken in the light most favorable to the Harrells as the nonmoving party, is sufficient to raise a dispute of material fact as to the materiality of the licensing representation. The record at summary judgment shows that without DeLuca's representation that he used licensed subcontractors, the Harrells would not have entered into the Sales Contract or Construction Agreement, and, therefore, the representation was material. Accordingly, we need not determine whether Virginia law also requires subcontractors working under a licensed contractor to hold their own licenses—it is enough for our purposes that, regardless of the minimum standards for subcontractors set by state law, it mattered *to the Harrells* that DeLuca's subcontractors were licensed.

Although the district court's grant of summary judgment was primarily focused on its view that the Harrells could not satisfy the materiality requirement of a fraud claim, it also expressed its thoughts about whether the licensing representation was sufficiently definite and whether the Harrells could satisfy the requirement that their reliance on the representation resulted in some damage to them. *Harrell*, 590 F. Supp. 3d at 950. DeLuca cites these statements by the district court as providing us with alternative bases to affirm. So, we will briefly address these points.

First, in arguing that the licensing representation is too vague to support a claim for fraud, DeLuca points to the district court's statement that "[e]ven looking at the evidence in the light most favorable to the Harrells, the statement that the subcontractors were 'licensed' is vague and indefinite." *Harrell*, 590 F. Supp. 3d at 950. DeLuca further argues that any statement regarding whether he used licensed subcontractors is "general"

and that he could have been referring to his subcontractors holding "a business license, or a driver's license." Response Br. at 11–12.

Under Virginia law, "[s]tatements which are vague and indefinite in their nature and terms, or are merely loose, conjectural or exaggerated" cannot support a claim of fraud because an individual "is not justified in placing reliance upon them." *Tate v. Colony House Builders, Inc.*, 508 S.E.2d 597, 599 (Va. 1999) (quoting *Saxby v. S. Land Co.*, 63 S.E. 423, 424 (Va. 1909)). For example, in *Tate*, statements that a new dwelling was "free from structural defects; . . . constructed in a workmanlike manner[; and] . . . fit for habitation" were actionable for fraud because such statements were "representations of the present quality or character of the property" and their truth or falsity was subject to a factual determination. *Id.* at 600. In contrast, other statements at issue in *Tate*, such as the home being of the "highest quality," were not actionable as they were merely opinions. *Id.* (holding that statements "in the nature of puffing or opinion" cannot form the basis of an action for fraud). Similarly, in *Lambert v. Downtown Garage, Inc.*, the Supreme Court of Virginia held that a statement that a vehicle was in "excellent" condition was not actionable for fraud because that statement "cannot be viewed as anything more than an opinion." *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717 (Va. 2001).

In support of their opposition to summary judgment, the Harrells submitted a declaration from John Harrell stating that DeLuca "stated to [him] that he was a Class A contractor and that all his subcontractors were also licensed." J.A. 225 ¶ 10. We are not persuaded by DeLuca's argument that this statement was "general" because a statement

10

that a person is "licensed" could technically mean they hold any sort of license, including a driver's license. While, stripped of all context, a statement that a person is "licensed" may be general, Virginia law requires that we determine whether a statement is too vague and indefinite to support a claim for fraud by "taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." *Packard Norfolk, Inc.*, 95 S.E.2d at 211.

In the context of a conversation with a contractor to arrange for improvements to a property, a person would reasonably understand the word "licensed" to mean that someone holds a license to complete construction work. And, notably, DeLuca made the statement that his subcontractors were "also licensed" immediately following his representation that he was a Class A contractor. J.A. 225. DeLuca's use of the word "also" strongly implies that his subcontractors were also licensed *as contractors*, or, at the very least, held a comparable license. Considering the context in which it was made, the licensing representation is sufficiently definite. It is similar to the statement in *Tate* that the home was free from structural defects, constructed in a workmanlike manner, and fit for habitation—it is a representation of the present character of the construction license status of DeLuca's subcontractors and its truth or falsity can be determined

11

objectively.[4] Thus, DeLuca's statement that he uses only licensed subcontractors is sufficiently definite to support a claim for fraud under Virginia law.

DeLuca next argues that we can affirm on the alternative ground that the Harrells are unable to satisfy the damage element of a claim for fraud. But the record before the district court did contain some evidence that at least raises an issue of disputed fact as to whether the Harrells suffered any damage from their reliance on the licensing representation. The Harrells submitted evidence that Eagles Contractors LLC performed construction work on the Property and that Eagles Contractors LLC did not have a Virginia contractor's license. And in the expert report the Harrells submitted in support of their cross-motion for partial summary judgment, their expert noted flaws in several projects that appear on the Eagles Contractors LLC invoice—for example, the roof on the Carriage House, the wood flooring, and framing. The expert also concluded, based on the flaws, that "the subcontractors that performed the work had little, if any, experience in the work they were performing" and did not conform to industry standards. Thus, the expert concluded, corrective work at an additional cost would be needed to fix these

---

[4] We acknowledge that the Harrells' Amended Complaint alleged only that "DeLuca represented that, as owner/developer, he would only use qualified contractors with years of experience in their trades and 'the best' reputations." J.A. 74 ¶ 89. But the record before the district court on summary judgment, viewed in the light most favorable to the Harrells, evidences the more specific statement we analyze above. Satisfied that this statement is sufficiently definite to create a genuine dispute of material fact for purposes of summary judgment, we express no opinion regarding whether any of the other statements alleged at various points by the Harrells would be sufficient to support a claim of fraud in the inducement or constructive fraud.

flaws.[5] Accordingly, we cannot conclude from the record that the Harrells would not be able to show damage resulting from their reliance on the licensing representation.

Finally, DeLuca urges us to affirm because, after the bench trial, the district court concluded that DeLuca did not intend to fraudulently induce the Harrells to enter into the contracts. Response Br. at 17–18. But, in determining whether the district court properly entered summary judgment on this claim, we cannot properly consider posttrial conclusions it made in the context of *other* claims. *E.g.*, *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) ("Our review is limited to the evidence before the district court at the time of its partial-summary-judgment ruling, and we do not consider the evidence introduced subsequently at trial."); *R.J. Clarkson Co. v. Jenn-Air Co.*, 85 F.3d 616, at *1 (4th Cir. 1996) (unpublished, per curiam table decision) ("[W]e consider the record as it existed at the time the district court granted summary judgment [on the claim in question], ignoring evidence later presented at trial on other claims."). And, in any event, for the reasons outlined below, even if the district court ultimately concludes that DeLuca misrepresented the license status of his subcontractors without ill intent, that representation could still support a claim for constructive fraud.

Thus, we vacate the district court's grant of summary judgment and remand for further proceedings.

---

[5] After the bench trial, the district court ultimately awarded damages based on DeLuca's expert's calculation, not the Harrells' expert. *Harrell*, 2022 WL 16745115, at *11. While that expert's report does not appear to have been submitted at summary judgment, it also contains evidence of flaws in projects on which Eagles Contractors LLC worked.

13

B.

Turning to the bench trial, the Harrells next challenge the district court's finding that their claim for constructive fraud based on the permitting representation—their allegation that DeLuca represented to them prior to their entry into the Sales Contract that he had obtained all necessary permits for construction on the Property—was barred by the source-of-duty rule. We review a district court's judgment following a bench trial under a "mixed standard of review," reviewing factual findings for clear error and conclusions of law de novo. *Roanoke Cement Co. v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005).

Virginia's source-of-duty rule delineates the boundary between tort and contract claims to protect against "turning every breach of contract into a tort." *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (Va. 2019) (quoting *MCR Fed., LLC v. JB&A, Inc.*, 808 S.E.2d 186, 193 (Va. 2017)). Accordingly, whether an action sounds in tort, contract, or both depends on the "source of the duty violated." *Id.* at 254. When a plaintiff brings a claim based on an alleged breach of a duty that arose "by mere agreement of the parties," as opposed to "by operation of law," then it sounds in contract and the source-of-duty rule prevents recovery in tort for that breach. *Id.* (quoting *Glisson v. Loxley*, 366 S.E.2d 68, 71 (Va. 1988)).

Here, the district court determined that the source-of-duty rule barred recovery in tort for the Harrells' claims for constructive fraud based on the permitting representation because it concluded that, to the extent DeLuca breached a duty by making the permitting

14

representation, it was a breach only of a contractual obligation to the Harrells.[6] *Harrell*, 2022 WL 16745115, at *3–4. We conclude that further proceedings are necessary to resolve this matter.

"Virginia law 'distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract.'" *City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 447 (4th Cir. 1990) (quoting *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988)). Thus, whether the Harrells can recover in tort for the permitting representation depends upon the nature of the statement. A statement by DeLuca to the effect of "I have already obtained the necessary permit(s)" is either true or false when made—it does not hinge on any future action—so, if false, it can support a claim for fraud. Compare that to a statement by DeLuca to the effect of "I will obtain all necessary permits." That is merely a promise to do something in the future. And while it might constitute breach of contract if he fails to follow through, it cannot sustain a claim for fraud.[7]

---

[6] The district court cited both the source-of-duty rule and the related economic-loss rule in its conclusion. The economic-loss rule is a "remedy-specific application of the source-of-duty rule" and prevents recovery in tort for "damages which were within the contemplation of the parties when framing their agreement." *Tingler*, 834 S.E.2d at 264 (quoting *Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 488 (Va. 2010)). For simplicity, we refer in the main text only to the source-of-duty rule, but our conclusions should be understood to encompass the district court's evaluation of both rules.

[7] There is an exception to this categorical statement in cases where promises "are made with a present intention not to perform them." *Abi-Najm*, 699 S.E.2d at 490 (quoting *Boykin v. Hermitage Realty*, 360 S.E.2d 177, 178 (Va. 1987)). That is, a

The district court did not make a factual finding regarding whether DeLuca's statements regarding permits for construction on the property were of present fact or future promise, but the record seems to support the former characterization. Dawn Harrell testified that during a tour of the Property on March 22, 2019, DeLuca "told us that the—he had already filed—or had a permit for the main house and that the carriage house was under the same permit." J.A. 484. She then stated that she understood from DeLuca that he "hadn't filed [the owner suite permit] yet" and would be filing that permit soon, but that "the permits had been filed other than the owner suite addition." J.A. 484. And John Harrell testified that "Mr. DeLuca had always told us that the carriage house was always part of the main house permit; in other words, there was one permit that covered all the work in the carriage house and all the work in the main house." J.A. 323–24.

The district court recognized that "[i]n the post-trial briefing, the [Harrells] argue[d] that [DeLuca] made a representation that he 'had a permit for the main house and that the carriage house was under the same permit' and that 'the permits had been filed other than the owner suite addition' on March 22, 2019." *Harrell*, 2022 WL 16745115, at *5. But its findings of fact do not contain a clear indication of whether, based on the evidence at trial, it found the Harrells' characterization of DeLuca's

statement to the effect of "I will obtain all necessary permits" *could* sustain a claim for actual fraud if DeLuca made the statement knowing he would not, in fact, obtain all the necessary permits. But the district court found—and the Harrells do not challenge on appeal—that DeLuca had no ill intent in making the permitting representation. *Harrell*, 2022 WL 16745115, at *3. Thus, the exception for future promises that are made with the present intent not to fulfill them does not apply.

statements credible. Because the source-of-duty rule would not bar a constructive-fraud claim based on a misrepresentation of present fact, the district court erred in relying on the source-of-duty rule without making a finding of fact regarding whether DeLuca misrepresented a present fact or merely failed to deliver on a promise. We thus vacate the district court's judgment in favor of DeLuca on this point and remand for further proceedings.

DeLuca argues that, even if the source-of-duty rule arguably does not bar the Harrells' constructive-fraud claim based on the permitting representation, we should nevertheless affirm because the Harrells cannot satisfy the damage or materiality elements of a constructive-fraud claim. We are not persuaded.

We start with the damage element. In analyzing the Virginia Consumer Protection Act claim, the district court stated: "[T]he only damages resulting from the general misrepresentations about the permitting process would be damages that result from not being able to move into the house as quickly as the Plaintiffs wished." *Harrell*, 2022 WL 16745115, at *5. And, as DeLuca notes, the district court later went on to determine that no damages were recoverable on the Virginia Consumer Protection Act claim because of the Harrells' failure to mitigate. *Id.* at *9. So, DeLuca contends, because the only injury the permitting representation caused was a delay in moving into the Property, and because the Harrells could not collect damages arising from that injury, they must not be able to satisfy the element of a claim for constructive fraud requiring that they show that some damage resulted from their reliance on the representation.

17

But whether the Harrells were able to *recover* monetary damages for a Virginia Consumer Protection Act claim based on the permitting representation is a question distinct from whether they were *damaged* by their reliance on the representation. The district court never reached the damage element of a constructive-fraud claim because it applied the source-of-duty rule to bar recovery, but its statements regarding the Virginia Consumer Protection Act claim indicate that it believed the permitting representation caused *some* harm to the Harrells, albeit harm for which they could not recover monetary damages for other reasons. Thus, the Harrells' inability to recover monetary damages under a similar Virginia Consumer Protection Act theory does not preclude the district court finding that, if the other elements of constructive fraud are met, the Harrells are entitled to the remedy they seek on their constructive-fraud claim—rescission of the Sales Contract and Construction Agreement. *See Devine v. Buki*, 767 S.E.2d 459, 466–68 (Va. 2015) (upholding trial court's decision to rescind contract due to fraud but concluding consequential damages were not warranted).

Nor are we persuaded by DeLuca's argument that because the Sales Contract did not include any term regarding permits, and because the real estate agent who represented the Harrells in purchasing the Property testified at trial that the Sales Contract included "all the material terms," the permit status of the Property was not material. J.A. 469–70, 472. The Virginia Supreme Court has explicitly stated that "[o]ne seeking to void an agreement for fraud is not limited, in proving such fraud, to the provisions of the agreement itself." *State Farm Mut. Auto. Ins. Co. v. Butler*, 125 S.E.2d 823, 826 (Va. 1962) (quoting *Bendford v. Nat'l Life & Accident Ins. Co.*, 96 N.W.2d 113, 116 (Mich.

18

1959)). At the very least, the district court should have the first opportunity to weigh the real estate agent's testimony and, if it determines that testimony was credible, decide whether a term that was ultimately not material to the execution of the Sales Contract was nonetheless material to the Harrells' decision to enter into the contract.

In short, because we conclude that the district court improperly applied the source-of-duty rule without making an explicit finding regarding whether DeLuca made a misrepresentation of present fact or of future promise, we vacate the district court's judgment for DeLuca on the Harrells' claim for constructive fraud based on the permitting representation. We leave it to the district court to determine on remand whether the Harrells can satisfy the elements of this claim.

C.

Finally, the Harrells argue that the district court violated Federal Rule of Civil Procedure 52(a) when, in finding in their favor on the breach-of-contract claim, it failed to conclude whether DeLuca had breached the Sales Contract and instead concluded only that he breached the Construction Agreement. This failure is important, the Harrells argue, because the Sales Contract expressly provides for the recovery of attorney's fees in case of breach but the Construction Agreement does not.

Federal Rule of Civil Procedure 52(a) requires that, "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). And we have noted that "[t]o satisfy the demands of Rule 52(a), a trial court must do more than announce statements of ultimate fact. The court must support its rulings by spelling out the

subordinate facts on which it relies." *U.S. ex rel. Belcon, Inc. v. Sherman Constr. Co.*, 800 F.2d 1321, 1324 (4th Cir. 1986). But we have also noted that, even if a district court should have made more explicit legal findings on certain issues, "once the district court ha[s] made adequate findings of fact, this court [i]s competent to apply proper legal principles to the facts found in order to resolve the controversy." *Glassman Constr. Co. v. U.S. ex rel. Clark-Fontana Paint Co.*, 421 F.2d 212, 214 (4th Cir. 1970).

We agree with the Harrells that the district court's findings regarding the breach-of-contract claim could have been more clearly stated. In its opinion, the district court stated that "[i]t is undisputed that a written agreement existed between the Parties. One of the operable documents demonstrating the written agreement is the [Construction Agreement]." *Harrell*, 2022 WL 16745115, at *7. It then explained that the Construction Agreement incorporated an attached exhibit listing items of work that were to be completed by August 1, 2019, and noted that multiple items on that list were not completed by that date. *Id.* at *7–8. And it concluded that "[t]he Plaintiffs have shown by a preponderance of the evidence that completing these items by August 1st, 2019—as expressly agreed to by the Parties—was material to the contractual agreement as unambiguously defined in the [Construction Agreement]. As these items were not complete by the deadline, the Defendant breached the contract." *Id.* at *8.

It seems from the district court's language that it was using the terms "the contract" and "the Construction Agreement" interchangeably. But the district court's statement that the Construction Agreement was "one of" the documents demonstrating "the written agreement" between the parties implies that *another* document exists, such

20

that "the Construction Agreement" and "the contract" are *not* interchangeable. And, in its prior rulings in this case, the district court emphasized that the Sales Contract and the Construction Agreement were distinct. Order at 2, *Harrell v. Deluca*, No. 1:20-cv-00087, (E.D. Va. Mar. 26, 2020), ECF No. 11 (denying DeLuca's motion to dismiss and stating that the breach-of-contract claim "states a claim as to both the Sales Contract and the Construction Agreement," and "[f]urther," that "the Construction Agreement did not extinguish, discharge, or contradict the preexisting Sales Contract terms, but instead evidences a renewed intent to maintain them by requiring future completion"); *Harrell*, 590 F. Supp. 3d at 947 (stating, when denying in part DeLuca's motion for summary judgment, that "[t]he Court has already found as a matter of law that the Sales [Contract] was collateral to the [Construction Agreement] and the two contracts did not merge"). Thus, despite apparently understanding the Sales Contract and Construction Agreement as distinct contracts, in its posttrial order, the district court failed to make an explicit finding regarding whether the Sales Contract had been breached.

Because they argue that the district court's posttrial *factual* findings are sufficient for us to apply legal principles to the facts found and reach independent conclusions of law, as we did in *Glassman Construction Co.*, the Harrells urge us to conclude as a matter of law that the Sales Contract was breached. *Glassman Constr. Co.*, 421 F.2d at 214. But, even if the Harrells are correct that the district court's factual findings are sufficient for us to reach a conclusion regarding breach of the Sales Contract, they cite no authority, and we have found none, *requiring* us to make conclusions of law beyond those of the district court. Because "we are a court of review, not first view," *Biggs v. N.C. Dep't of*

21

*Pub. Safety*, 953 F.3d 236, 243 (4th Cir. 2020), we leave it to the district court on remand to resolve this issue.

III.

In sum, because the district court erred in determining that the Harrells failed to raise a dispute of material fact as to whether the licensing representation was material to their decision to enter into the Sales Contract, and because we are not otherwise convinced that this claim cannot survive summary judgment, we vacate the district court's grant of summary judgment as to the Harrells' fraud claims regarding the licensing representation. Because we conclude that the source-of-duty rule would not bar the Harrells' constructive-fraud claim based on the permitting representation if the representation was of present fact, and because the district court did not make a clear determination of the character of that statement, we vacate the district court's judgment in DeLuca's favor as to that claim. And because we agree that the district court's opinion is unclear as to whether DeLuca breached the Sales Contract, we direct the district court on remand to make conclusions of law on that point. We otherwise affirm.

Accordingly, we remand to the district court for proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED
IN PART, AND REMANDED*

22